UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
────────────────────────────────────

DELISA KAI GEE LAUBER,

                         Plaintiff,        **No. 6:14-cv-06146(MAT)**
                                           **DECISION AND ORDER**

            -vs-

CAROLYN W. COLVN, Acting
Commissioner of Social Security,

                         Defendant.

────────────────────────────────────

## I.   Introduction

        Represented by counsel, Delisa Kai Gee Lauber ("Plaintiff")
brings this action pursuant to Title II of the Social Security Act,
seeking review of the final decision of the Commissioner of Social
Security ("the Commissioner") denying her application for
Disability Insurance Benefits ("DIB"). The Court has jurisdiction
over this matter pursuant to 42 U.S.C. § 405(g). Presently before
the Court are the parties' cross-motions for judgment on the
pleadings pursuant to Rule 12(c) of the Federal Rule of Civil
Procedure. For the reasons discussed below, the Commissioner's
decision is affirmed.

## II.  Procedural Status

        On March 19, 2012, Plaintiff protectively filed a DIB
application, alleging disability beginning September 15, 2009,
based on bipolar disorder, anxiety, hypertension, cluster
headaches, low potassium levels, endometriosis, and a thyroid

problem. T.110-15, 128.[1] After this application was denied, Plaintiff requested a hearing, which was held before administrative law judge Barry E. Ryan ("the ALJ") on November 21, 2012, via videoconference. Plaintiff appeared with her attorney and testified. The ALJ did not call a vocational or other expert. On December 18, 2012, the ALJ issued a decision finding Plaintiff not disabled. T.7-24, 31-62. On February 14, 2014, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. T.1-6. This timely action followed.

## III. Scope of Review

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Social Security Act ("the Act"), the district court is limited to determining whether the Commissioner's findings were supported by substantial record evidence and whether the Commissioner employed the proper legal standards. Green-Younger v. Barnhard, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence,

---

[1]

Citations to "T." refer to pages from the certified transcript of the administrative record, submitted by the Commissioner in connection with her answer to the complaint.

shall be conclusive"). The reviewing court nevertheless must
scrutinize the whole record and examine evidence that supports or
detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774
(2d Cir. 1998) (citation omitted). "The deferential standard of
review for substantial evidence does not apply to the
Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d
172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109,
112 (2d Cir. 1984)).

**IV.  The ALJ's Decision**

The ALJ followed the well-established five-step sequential
evaluation promulgated by the Commissioner for adjudicating
disability claims. See 20 C.F.R. § 1520.

The ALJ found that Plaintiff met the insured status
requirements for DIB through December 31, 2014. T.12. At step one,
the ALJ determined that Plaintiff had not engaged in substantial
gainful activity since September 15, 2009, the alleged onset date.
Id.

At step two, the ALJ found that Plaintiff's bipolar disorder
and substance abuse disorder were "severe" impairments. The ALJ
noted that she was assigned a global assessment of functioning
("GAF") of 45 in November 2011, when she first started seeing a
psychiatrist. During that examination, her mood was slightly
elevated and her speech was rapid and pressured at times. She was
diagnosed with social anxiety disorder on a rule out basis, bipolar

disorder, substance abuse disorder, and opiate addiction. The ALJ
noted that Plaintiff has had a history of abusing prescription
medications and has been hospitalized on multiple occasions for
overdosing on her medications, not taking her medications as
prescribed, or using alcohol in combination with her medications,
thereby causing an adverse drug interaction. The ALJ noted,
however, that there is "no indication in the medical records that
the . . . overdoses were suicide attempts or intentional attempts
to harm herself." T.13. The ALJ found that Plaintiff's
hypertension, low potassium, hypothyroidism, and endometriosis were
non-severe impairments, a finding not challenged here. With regard
to Plaintiff's allegation of cluster headaches, the ALJ concluded
that these were not medically determinable severe impairments,
given her normal CT scans in March 2006 and November 2010, and her
lack of complaints about headaches to her primary care provider and
endocrinologist. T.13. The ALJ also noted that Plaintiff
specifically denied photophobia to her primary care physician but
acted as though the light was bothering her eyes during the
consultative physician's examination.

The ALJ then considered whether Plaintiff's severe
impairments, singly or in combination, met or medically equaled a
listed impairment. He specifically considered Listing 12.04
(affective disorders) and Listing 12.09 (bipolar disorders). T.14.
With regard to the "Paragraph B" criteria of those listings, the

ALJ found that Plaintiff has no restrictions in performing activities of daily living; mild difficulties in social functioning; and moderate difficulties in maintaining concentration, persistence, and pace. T.14-15. The ALJ found no episodes of decompensation of extended duration, noting that her hospitalizations for drug overdoses lasted only two to three days, and there is no indication that these were suicide attempts. After her last hospitalization, she was a assigned a GAF of 70, indicating minimal psychiatric symptoms and limitations. T.15. The ALJ also considered the "Paragraph C" criteria, and found that these were not satisfied given, _e.g._, the lack of evidence that Plaintiff has a residual disease process resulting in such marginal adjustment that even a minimal increase in mental demands or a change in the environment would be predicted to cause her to decompensate psychiatrically. T.15.

The ALJ assessed Plaintiff's residual functional capacity ("RFC") to be the full range of work at all exertional levels,[2] but "due to her mental impairments and substance abuse disorder," Plaintiff is "unable to perform complex tasks." T.16. However, the ALJ determined, Plaintiff "retains the ability to continuously understand, carry out, and remember simple instructions, perform

---

[2]

Plaintiff does not challenge the physical aspect of the ALJ's RFC assessment. Therefore, that portion of the ALJ's decision will not be discussed in any further detail.

simple tasks, respond appropriately to supervision, coworkers, and usual work situations, and deal with changes in a routine work setting." T.16. The ALJ noted that after her initial appointment with her psychiatrist, Dr. Tinu Addams, in November 2011, she did not return to see him again until May 2012, at which time she gave him disability forms to complete. During the consultative psychological examination in June 2012, Plaintiff's mood was euthymic and her affect was full range and appropriate; her attention, concentration, and recent and remote memory were intact; and her social skills and manner of relating were adequate.

At step four, the ALJ determined that Plaintiff was unable to return to her past work as a customer service representative, phlebotomist, or patient registrant at a hospital because the requirements of those jobs exceeded her RFC insofar as she is limited to unskilled work and these positions were semiskilled to skilled work. T.22. Considering Plaintiff's vocational profile, the ALJ noted that she was a "younger" individual within the meaning of the regulations and had completed one year of college plus vocational training to be a medical assistant.  T.22. As Plaintiff had only nonexertional limitations, the ALJ relied on Medical-Vocational Guideline 204.00 ("the Grids") and Social Security Ruling ("SSR") 85-15, which provides that so long as a person can perform the basic mental demands of competitive, remunerative, unskilled work, she is "not disabled". The ALJ found that the

evidence established that Plaintiff had "no significant limitations in the performance of [the] basic mental demands of work[,]" i.e., understanding, carrying out, and remembering simple instructions; responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting. T.23. Since Plaintiff's nonexertional limitations had "little to no effect" on the occupational base of unskilled work at all exertional levels, application of the Grids indicated that a finding of "not disabled" was appropriate. T.23.

## V.    Discussion

### A.    Failure to Properly Weigh the Medical Opinions of Record

Plaintiff contends that the ALJ's RFC assessment is not supported by substantial evidence because he failed to properly apply the treating physician rule in his evaluation of the medical source statement of treating psychiatrist Dr. Addams. Plaintiff also argues that the ALJ erred in his assignment of great weight to the report of consultative psychologist, Sara Long, Ph. D.

#### 1.    Application of Treating Physician Rule

The Commissioner "recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant[.]" Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003). According to this rule, the opinion of a claimant's treating physician (or psychiatrist) as to the nature and severity of her impairment will be given

"controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); see also, e.g., Green-Younger, 335 F.3d at 106. Nevertheless, a "treating physician's statement that the claimant is disabled cannot itself be determinative." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999).  The Second Circuit has explained that in general, "the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with . . . the opinions of other medical experts," Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004), becase "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve," Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002); accord Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008).  If the treating source's opinion is not given controlling weight, the regulations require the ALJ to consider several factors in determining how much weight it should receive, such as the "'relevant evidence . . ., particularly medical signs and laboratory findings,' supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." Burgess, 537 F.3d at 129 (citing 20 C.F.R. § 404.1527(d)(2)(i)-(ii), (3)-(5)).  An ALJ's failure to provide "good reasons" for not crediting a treating source's

opinion is a ground for remand. Id. at 129-30 (citing Snell, 177 F.3d at 133; other citation omitted).

Here, the Commissioner does not challenge Plaintiff's assertion that Dr. Addams is a treating source. Dr. Addams concluded that Plaintiff has "extreme" limitations in her ability to perform activities within a schedule, maintain regular attendance, and/or be punctual within customary tolerances, complete a normal workday or workweek without interruptions from psychological symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, get along with coworkers without distracting them or exhibiting behavioral extremes, and respond appropriately to ordinary work-based stresses. Dr. Addams indicated that Plaintiff has "marked" limitations in her ability to maintain attention and concentration for extended periods of time, to sustain an ordinary routine without special supervision, to accept instructions and respond appropriately to criticisms from supervisors, and to respond appropriately to changes in the workplace. Dr. Addams assigned "medium" limitations to Plaintiff's ability to interact appropriately with the general public, and he estimated she would be absent more than three days per month due to her mental impairments.

The ALJ determined that Dr. Addams' report was not entitled to controlling weight because it is "not supported by objective

evidence, it is inconsistent with other substantial evidence, and is contradicted by other medical opinions[.]" T.20 (citing Kilikei v. Astrue, CV-08-1066 (E.D.N.Y. Apr. 22, 2009)). In particular, the ALJ found that Dr. Addams' treatment notes did not support his assignment of severe limitations to almost all aspects of Plaintiff's functional abilities. T.20. As the ALJ observed, the only mental status examination in Dr. Addams' records, which was completed on intake by a psychiatric nurse practitioner in his office, "showed relatively benign findings that are not consistent with his opinion." T.20. Dr. Addams' treatment notes, for the most part, detail his conversations with Plaintiff and do not provide any assessment of her current level of functioning or how her alleged symptoms from her mental impairments are affecting her. Likewise, although Dr. Addams refers, in his medical source statement, to Plaintiff suffering from paranoia, panic attacks, anxiety, insomnia, anger, poor attention span, and daily headaches, his treatment notes do not reflect that Plaintiff has these symptoms. Rather, as the ALJ found, it appears that Dr. Addams simply incorporated Plaintiff's subjective complaints into his medical source statement. Furthermore, as the ALJ observed, the fact that Plaintiff "is able to socialize with her neighbors and friends, visit her mother in New Jersey, and travel to the Bahamas" "suggest that her paranoia, panic attacks and anxiety are not very bothersome." T.20. The ALJ properly noted, as a basis for finding

Dr. Addams less than credible, the inconsistencies between Dr. Addams' statement that Plaintiff does not abuse drugs or alcohol, and the diagnoses issued by Dr. Addams' own psychiatric nurse practitioner and by the consultative psychologist Dr. Long. As the ALJ observed, the medical records indicate some episodes of Plaintiff abusing her prescription medications since March 2006. In addition, Plaintiff's repeated failure to take her medications as prescribed has resulted in multiple hospitalizations. Indeed, Dr. Addams has had discussions with Plaintiff regarding this subject. Thus, Dr. Addams' statement in his medical source statement is at odds with the record. Plaintiff also asserts that Dr. Addams' treatment records include references to significant psychiatric issues such as auditory hallucinations; however, a review of the treatment notes indicated that Dr. Addams checked "no indication" next to this particular symptom. E.g., T.419, 420, 421. Also, Dr. Addams consistently noted that Plaintiff had a cooperative attitude and goal-oriented, logical thought processes. E.g., T.419, 420, 421.

The ALJ considered the regulatory factors in weighing Dr. Addams' medical source statement and carefully documented multiple reasons, supported by the record, why Dr. Addams' restrictive opinion was not consistent with other substantial evidence in the record and was inconsistent with his own notes and those of his staff. Under these circumstances, the Court cannot

find that the ALJ erred in declining to assign controlling weight to the opinion of treating source Dr. Addams. See Halloran, 362 F.3d at 32 (finding that treating source not entitled to deference where this physician issued opinions that were inconsistent with other substantial evidence in the record).

### 2. Erroneous Weighing of Consultative Psychologist's Opinion

Plaintiff contends that the ALJ erred in assigning "great weight" to the opinion of consultative psychologist Dr. Long. Plaintiff relies on the Second Circuit's statement that "[i]n evaluating a claimant's disability, a consulting physician's opinions or report should be given limited weight." Cruz v. Sullivan, 912 F.2d 8, 13 (2d Cir. 1990) (citing Bluvband v. Heckler, 730 F.2d 886, 894 (2d Cir. 1984) (ALJ should not "baldly" accept consulting physicians' evaluations on issues that are disputed)). However, the Second Circuit also has found that a consultative examiner's opinion can constitute substantial evidence in support of an ALJ's RFC assessment. See, e.g., Diaz v. Shalala, 59 F.3d 307, 315 (2d Cir. 1995) ("The opinions of three examining physicians, plaintiff's own testimony, and the medical tests together constitute substantial evidence adequately supporting the Secretary's conclusion that plaintiff's injuries did not prevent her from resuming her job . . . .") & id. at 313 n. 5 (explaining that "the opinions of nonexamining sources [can] override treating sources' opinions provided they are supported by evidence in the

record") (citations omitted); Pellam v. Astrue, 508 F. App'x 87, 90 (2d Cir. 2013) (summary order) (ALJ had no obligation to supplement record by acquiring medical source statement from one of claimant's treating physicians, where ALJ had all of claimant's treating physicians' treatment notes, and consultative examining physician's opinion largely supported RFC assessment). An ALJ "may give greater weight to a consultative examiner's opinion than a treating physician's opinion if the consultative examiner's conclusions are more consistent with the underlying medical evidence." Suarez v. Colvin, --- F. Supp.3d ----, 2015 WL 2088789, at *23 (S.D.N.Y. 2015) (citing Rosier v. Colvin, 586 F. App'x 756, 758 (2d Cir. 2014) (summary order) (ALJ properly relied on evaluations by a consultative examiner to reject treating physician's opinion where other substantial evidence in the record was inconsistent with treating physician's opinion); Rivera v. Colvin, 13 Civ. 7150, 2015 WL 1027163, at *16 (S.D.N.Y. Mar. 9, 2015) ("It is not per se legal error for an ALJ to give greater weight to a consulting opinion than a treating opinion."); other citations omitted).

The ALJ here gave "great weight" to the report of consultative psychologist Dr. Long, who examined Plaintiff at the Commissioner's request on June 20, 2012. T.21. In particular, the ALJ determined that Dr. Long's opinion was "more consistent with the clinical findings reflected in . . . [Plaintiff]'s medical record." T.21 (citations omitted). For her medical source statement, Dr. Long

found that Plaintiff was able to follow and understand simple
directions, perform simple tasks independently, maintain attention
and concentration, maintain a regular schedule, learn new tasks,
perform complex tasks independently, and make appropriate
decisions. However, Dr. Long noted, "[t]here appears to be some
impairment at this time related to anxiety" but "[i]t is not clear
to what degree medication and substances might be a factor." T.310.
Dr. Long also observed that Plaintiff's insight and judgment both
were "poor", T.310, and that Plaintiff "present[ed] with no insight
or skills for managing anxiety." T.311. Dr. Long also reported that
Plaintiff engaged in "occasional weeping" during the examination,
which "appear[ed] to be related to anxiety[,]" T.309, the source of
which was her father's death some years earlier. Id. Dr. Long went
on to conclude that Plaintiff was able to "manage stress
adequately", although she had a "low stress threshold" at the time
of the evaluation. T.310.  Ultimately, Dr. Long opined that
Plaintiff's prognosis was "good" "given medication management as
appropriate, substance [use] relapse prevention, psychotherapy
[which she recommended that Plaintiff pursue], and motivation to
acquire skills." T.312.

It was not unreasonable for the ALJ to rely on Dr. Long's
opinion that Plaintiff was able to interact appropriately with
others, and to decline to limit Plaintiff to jobs with low social
interaction. The ALJ cited the record evidence that Plaintiff was

able to socialize with friends, neighbors, and her family members, and was able to travel to New Jersey to visit family and go on vacations with friends. T.22. The ALJ also noted that Plaintiff's previous work as a phlebotomist and hospital registration clerk involved continuous contact with patients and staff, and she did not report being unable to interact in a socially appropriate manner in these environments. As the ALJ noted, Plaintiff did not lose her position as a registration clerk because of symptoms related to social anxiety; rather, it appears there was a discrepancy with her register. Moreover, Dr. Long noted that during the consultative examination, Plaintiff was "cooperative with good social skills." T.309. Finally, the Court notes that Plaintiff's characterization of her impairments has focused on her perceived forgetfulness and distractibility—not on any type of social anxiety. For instance, she told Dr. Long, "I can't remember stuff. I can't manage. My mind just goes." T.310-11; see also, e.g., T.288 (informing primary care provider that she was applying for disability because she was "unable to multitask or work in high stress environment"). The ALJ's RFC assessment takes into account Plaintiff's statements to her doctors about her impairments, as well as Dr. Long's notation that Plaintiff presently had a "low stress threshold", since it limits Plaintiff to performing simple tasks and only having to deal with changes in a routine work setting.

-15-

In sum, the Court finds that the ALJ did not err in giving greater weight to the consultative psychologist's opinion, as opposed to the treating psychiatrist's opinion because, as discussed above, the consultative psychologist's opinion was more consistent with the underlying medical evidence and her clinical examination results. See, e.g., Frawley v. Colvin, No. 5:13-CV-1567(LEK/CFH), 2014 WL 6810661, at *5-7, *9-10 (N.D.N.Y. Dec. 2, 2014) (ALJ's decision to give great weight to consultative psychologist's opinion was supported by substantial evidence because the opinion was consistent with the same medical evidence relied on by the ALJ to reject the treating psychologist's opinion). Also as discussed above, the ALJ did not err in declining to adopt the extremely restrictive opinion offered by treating psychiatrist Dr. Addams because, inter alia, it was not supported by substantial evidence in the record, including his treatment notes. To the extent that Plaintiff argues that there is other substantial evidence in the record of significant mental limitations attributable to her mental impairments, the Second Circuit has explained that "whether there is substantial evidence supporting the [claimant]'s view is not the question . . . ; rather, [the Court] must decide whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) (citation omitted). The present record contains substantial evidence supporting the ALJ's

decision, and therefore it must be affirmed. See Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) ("If there is substantial evidence to support the [agency's] determination, it must be upheld.").

**B.   Failure to Call a Vocational Expert**

Plaintiff argues that her significant nonexertional limitations should have precluded the ALJ's reliance on the Grids to meet the Commissioner's burden at the fifth step of the sequential analysis. Plaintiff is correct that where a claimant's nonexertional limitations "'significantly limit the range of work permitted by [her] exertional limitations,' the ALJ is required to consult with a vocational expert." Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) (quotation omitted). Here, as discussed above, the Court has found that the ALJ did not err in his weighing of the medical opinions of record. Having determined that Dr. Addams' restrictive opinion was not entitled to controlling weight, and having credited Dr. Long's opinion that Plaintiff does not have significant nonexertional limitations in terms of her abilities to perform work-related functions, the ALJ reasonably concluded the testimony from a vocational expert was unnecessary and that reliance on the Grids was appropriate.

Plaintiff also argues that the ALJ erred in failing to call a vocational expert to opine regarding the extent to which Plaintiff's likely absenteeism from work and inability to adhere to a regular schedule would erode the pertinent occupational base of

unskilled work. In light of the Court's conclusion that the ALJ did not err in rejecting Dr. Addams' opinion, which was the only record evidence setting forth these significant nonexertional limitations, the Court necessarily must find that the ALJ did not err in declining to incorporate these nonexertional limitations into his RFC assessment. Absent such nonexertional limitations, there was no need to seek input from a vocational expert.

## VI.  Conclusion

For the foregoing reasons, the Court finds that the Commissioner's determination was not erroneous as a matter of law and was supported by substantial evidence. Accordingly, the Commissioner's determination is affirmed. Defendant's Motion for Judgment on the Pleadings is granted, and Plaintiff's Motion for Judgment on the Pleadings is denied. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**S/Michael A. Telesca**
_____
        HON. MICHAEL A. TELESCA
        United States District Judge

Dated:      July 29, 2015
            Rochester, New York.